HANLEY *v.* UNITED STATES FIDELITY & GUARANTY CO.

SURETY BONDS—CONSIDERATION—RETURN.

A contractor with a village, being required to give a bond, procured a surety company to give a preliminary bond.    The village thereupon paid him the full amount called for by the contract.    A statement that this payment had been made was contained in the application to the company for a formal bond.    The company issued a bond containing a stipulation that the village should give notice to it before making the last payment under the contract.    The village refused to accept the bond with such stipulation, and so notified the company, which requested its return, gave notice that it did not desire to assume the suretyship in question, and thereafter insisted that the bond was invalid.    The bond was retained by the village, and the contractor was allowed to complete the contract without giving any other bond.    *Held*, that the contractor was not entitled to a return from the surety company of the premium paid for the bond, after completing the contract, and its acceptance by the village; the bond then having performed its full office, so far as he was concerned.

Error to Wayne; Hosmer, J. Submitted October 16, 1902. (Docket No. 76.) Decided November 11, 1902.

*Assumpsit* by James Hanley against the United States Fidelity & Guaranty Company to recover the premium paid for a bond. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed.

*Moore & Moore* (*Henry B. Shaw*, of counsel), for appellant.

*Harry Helfman* (*Fred A. Baker*, of counsel), for appellee.

MOORE, J. The plaintiff had a contract with the village of Highland Park which made it necessary for him to give a bond in the sum of $55,000. A bond was furnished by defendant. It is claimed by plaintiff that this bond was not a valid bond, that it was repudiated by defendant, and that he is entitled to recover back the premium he paid for the giving of the bond. The trial judge, in directing a verdict for plaintiff, expressed himself as follows:

"The counsel for plaintiff in this case claims there was never any liability under the bond. Possibly that may or may not, if it were material for consideration, be a question for you; but it does not seem to me that it is proper to say that, when the liability is called in question of the company, it is competent for the company to say that the bond never had an inception, and that by the terms of the bond, on an application which was strictly honest by Mr. Hanley, a condition was inserted which vitiated it from the first, and afterwards be heard to say that the premium had been earned."

The case is brought here by writ of error.

The important facts are not very much in dispute. August 4, 1898, the plaintiff entered into a written contract with the village of Highland Park, which contained the following agreement:

"And the party of the first part, in consideration of the covenants and agreements of said party of the second part, covenants and agrees to pay unto the said party of the

second part the aforesaid sum of fifty-one thousand eight hundred fifty and no / 100 dollars as soon as said second party shall sign and seal this agreement, and furnish a bond satisfactory to said first party for the carrying out and completion of the terms of this contract."

On the same day Mr. Hanley filed an application for a bond for $55,000 to be given by defendant to the village of Highland Park, in which was set out the contract, and containing the following statement: "Payments, $51,850.00. Paid when contract was signed, Aug. 4th, 1898. Percentage reserved from payments until completion, none."

At the same time there was delivered what is called a "preliminary certificate," that was given in lieu of a bond to be issued in the future, reading as follows:

"Fidelity Department,
"United States Fidelity & Guaranty Company.
"Home Office: Southwest Corner of Calvert and German Streets, Baltimore, Maryland.

"In consideration of the sum of five dollars, the United States Fidelity & Guaranty Company hereby guarantees the fidelity of James Hanley, in the sum of fifty-five thousand dollars, in favor of the village of Highland Park, Wayne county, Michigan, from the fourth day of August, 1898, to the fourth day of August, 1899, subject to all the covenants and conditions set forth and expressed in the bond of this company to be issued on even date herewith, and forwarded from the home office within 15 days from date of issue."

(Following printed across end of certificate in red ink:)
"All liability of the company on this instrument shall cease and determine on the issuance by the company of the duly executed bond, or, if the bond is not issued, on the fifteenth day from the countersigning of said instrument by the general agent."

"John R. Bland,
"V. P. and General Manager.
" City.          State.                Corporate Seal.
"Alexander Payson Knapp,
"Secretary.
"Goodrich Bros., General Agents,
"Walker Block, Detroit, Mich.
"August 4, 1898.          Countersigned: ——,
"General Agent."

Upon the same date the full amount of the contract price was paid over to Mr. Hanley by the village authorities. The application of Mr. Hanley was forwarded to the home office, and a bond was forwarded containing, among others, the following condition:

"And provided, lastly, that the assured or the superintendent of the work must give said surety due notice before the last payment under the contract herein referred to is made to the principal; otherwise this obligation shall be void as to any liability of the surety hereunder."

When this bond came to the village authorities, it was not formally accepted, and a question was raised, inasmuch as Mr. Hanley had already received his pay in full, of whether the condition quoted ought not to be stricken from the bond. The village president, acting for the village, took the bond to counsel, who, after examining the bond, suggested that the president write to the defendant a letter containing the following, among other things, which was done August 16, 1898:

"*Gentlemen:* Your company, as surety for James Hanley, has executed a bond to the village of Highland Park, Wayne county, Michigan. The penal sum of the bond is $55,000.00. One provision of said bond reads as follows: 'Provided, lastly, that the assured or superintendent of the work must give the said surety due notice before the last payment under the contract herein referred to is made to the principal; otherwise this obligation shall be void as to any liability of the surety hereunder.' We understand that you have been furnished with a copy of the contract entered into between Mr. Hanley and the village. And we are further informed that you have been already notified of the fact that the whole amount of the contract price for doing the work has been paid to Mr. Hanley, and that you executed the bond after having received that notice. This being true, the clause above quoted should not be incorporated in the bond. The fact is, as above stated, that Mr. Hanley has already been paid his entire contract. Before passing upon this bond, we wish to be notified whether we are correct in our information, and whether you admit that you received notice of

the fact that Mr. Hanley has been paid as above mentioned. Please give this matter your immediate attention.

"Yours very truly,
"W. W. McAlpine,
"President."

A reply was sent as follows:

"August 18, 1898.

"W. W. McAlpine, Esq.,
"President Highland Park,
"Wayne County, Michigan.

"*Dear Sir:* In *re* bond of James Hanley, we beg to advise you, in reply to your favor of the 16th instant, that the United States Fidelity & Guaranty Company, when it executed the above bond to the village of Highland Park, Wayne county, Michigan, had not received formal notice that the contract price for doing the work contracted for by him had been paid; hence you are informed that, in view of the premises, this company cannot go any further into the matter, or in any way alter its bond, unless the contractor can comply with the conditions with which it may be the wish of this company to have him comply. What these conditions are cannot at this moment be determined, for a more thorough investigation of the nature of the contract and the standing and responsibility of the contractor will necessarily have to be made. We beg to state, therefore, that, in the light in which the matter stands now, this company will be compelled to insist upon a strict performance of the terms and conditions of the bond executed by it. As a consequence of the information contained in your said favor, the surety company hereby takes occasion to notify you formally that it does not desire to assume the suretyship in question, and therefore we request the return of its bond pending further investigation."

The bond was not returned as requested. The village president says it was given to the village attorney, to be returned to the company. It is the claim of the company that the village authorities refused to return it until a new bond was given.

After the correspondence above quoted, of which correspondence the agent and Mr. Hanley were probably ignorant, Mr. Hanley paid the premium by giving to the

agent his check, which included the consideration of the preliminary bond. The agent obtained the bond from the village attorney, and canceled the government stamps.

It is claimed by plaintiff that a special agent interviewed him and his attorney, and insisted that the bond was invalid. It is the claim of defendant that it sought to get a return of the bond and to return the premium, but the plaintiff refused to receive the latter, and insisted that the bond was valid. No other bond was in fact ever given by Mr. Hanley to the village authorities. He proceeded with his work, and had it nearly completed, when trouble arose between the city authorities of Detroit and the village and Mr. Hanley about connecting the village sewer with the Woodward-avenue sewer. On the 7th of June, 1899, the village engineer called the attention of defendant to the situation, and notified it that "the village of Highland Park will hold you liable on the bond for such failure on the part of the contractor." It is claimed the village engineer had no authority to give this notice.

On the 14th of July a village taxpayer filed a bill in chancery against the village, the trustees of the village, Mr. Hanley, and the defendant in this cause, setting forth Mr. Hanley's contract; the giving of the bond; the trouble between Mr. Hanley, the village of Highland Park, and the city of Detroit about the sewer connection,—and claiming that Mr. Hanley had not performed his contract, and that the village authorities were about to accept the contract as completed, and release the defendant on its bond, and praying that they might be enjoined from doing so. The defendant in this case interposed an unsworn answer in that case, signed by the solicitors only, in which it was stated:

"But this defendant denies that any bond having any validity or force was ever executed or delivered to said village; and this defendant denies that it is now liable or ever was liable, either directly or contingently, to said village on any bond or contract whatever."

The solicitor who drew and filed this answer testified:

"At the time I drew that answer, I understood the facts to be that all the money had been paid upon the Hanley contract without the knowledge of the United States Fidelity & Guaranty Company, and I regarded that as a violation of the last provision in the bond, because I regarded that as a misrepresentation of the facts upon which the bond was issued; that is, that it would be a fraud upon the company to secure a bond which provided that the company should have notice of the last payment, and before the bond was issued to have paid up in full, so that the company could not have notice of the last payment referred to in the bond. Had I known the facts at that time, I would not have filed that answer."

The litigation in the chancery case does not seem to have been pursued any further. Mr. Hanley completed his contract, and it was accepted without his giving any other bond. About a year later he made a claim for the return of the premium. It was not paid, and, without procuring a return of the bond, some time later this suit was brought.

A great many interesting legal questions are raised by counsel in their briefs, but we think the facts are controlling. The record discloses very clearly: *First*, that the preliminary bond was regarded as sufficiently satisfactory, and so far a compliance with the terms of the contract that the village authorities were willing to, and did, pay over to the plaintiff the full amount which was to be earned by a performance of the contract, $51,850; *second*, the agent of the company knew of this payment when the application was drawn upon which the formal bond was issued, and a statement of the fact was made in the application, so that the defendant company must be presumed to have known that all the payments had been made when it executed and forwarded the formal bond; *third*, when the company requested a return of the bond, its request was not granted, but the bond was retained, and Mr. Hanley was allowed to go on and complete his contract without requiring any other bond; *fourth*, it was not until considerable time had elapsed after Mr. Hanley had completed his contract, and it had been accepted, and the occa-

sion for giving a bond had passed by, that he made any claim that he was entitled to a return of the consideration he had paid for a bond, which, so far as he was concerned, had performed its full office.   Under these circumstances, instead of directing a verdict for the plaintiff, one should have been directed in favor of defendant.

The judgment is reversed, and a new trial granted.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.